UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

800 ADEPT, INC., and ADEPTEL, INC.,

       Plaintiffs/Counter-Defendants,

-vs-                              Case No.  6:02-cv-1354-Orl-28DAB

MUREX SECURITIES, LTD., MUREX
LICENSING CORPORATION, TARGUS
INFORMATION CORPORATION, and WEST
CORPORATION,

       Defendants/Counter-Plaintiffs.

_____

## ORDER

This case comes before the Court for ruling on the following:

1.      Motion (And Memorandum) For Entry of Final Judgment, An Award Of Prejudgment Interest And A Permanent Injunction (Doc. No. 430, filed November 8, 2006);

2.      Motion And Memorandum To Award Plaintiff's Attorneys' Fees (Doc. No. 431, filed November 9, 2006);

3.      Defendants' Combined Response To Plaintiff's Motions For Entry Of Final Judgment, An Award Of Prejudgment Interest, A Permanent Injunction, And Attorneys' Fees (Doc. No. 442, filed November 29, 2006);

4.      Plaintiff's Motion And Memorandum To Strike Improper Submissions Contained in Docket No. 442 (Doc. No. 448, filed December 12, 2006); and

5.      Defendants' Opposition To Plaintiff's Motion And Memorandum To Strike Improper

Submissions Contained In Docket No. 442 (Filed At Docket 448) (Doc. No. 452, filed December 26, 2006).

## I.  Background of the Case

After a twenty-four day trial, a jury found that Defendants, Murex Securities, Ltd., Murex Licensing Corporation, and TARGUS Information Corporation ("the Murex-Targus Parties"), willfully infringed claims from two United States patents owned by Plaintiff 800 Adept, Inc. ("800 Adept"). More specifically, the jury found that the Murex-Targus Parties willfully infringed claims 1-19, 22-27, 29, 31, 34-39, 41, 43, and 46-51 of U.S. Patent No. RE36,111 ("the '111 Reissue") and claims 1 and 3-5 of U.S. Patent No. 5,805,689 ("the '689 Patent"). (Doc. No. 425, pp. 1-4). The jury found that such claims of the '111 Reissue and the '689 Patent were not invalid, and the Court determined later that the subject patents were not unenforceable. (*Id.* at 2-3; Doc. No. 470, filed April 2, 2007). For such infringement, the jury determined that the Murex-Targus Parties should pay $18,000,000.00 in damages to 800 Adept. (*Id.* at 3). The jury also found that Defendant West Corporation ("West") infringed claims 1-19, 22-27, 29, 31, 34-39, 41, 43, and 46-51 of the '111 Reissue.[1] (*Id.* at 2).  The jury found that West did not willfully infringe such claims and that it should pay 800 Adept $48,000.00 in damages. (*See* Doc. No. 425, pp. 3-4).

800 Adept now asks this Court to (1) award prejudgment interest on its claims, (2) enjoin the Murex-Targus Parties[2] from engaging in further acts of infringement, (3) award enhanced damages against the Murex-Targus Parties, and (4) an award of attorneys' fees under Title 35 U.S.C. § 285. (Doc. Nos. 430, 431). In addition to the above remedies, 800 Adept also requests that the

---

[1]  The jury was charged with instructions detailing both direct and indirect infringement.

[2]  800 Adept does not seek to enjoin the actions of West.

Court enter final judgment in this case.

## II.  Prejudgment Interest

800 Adept's request for prejudgment interest actually concerns two separate issues and two separate bodies of law, although neither 800 Adept nor the Targus-Murex Parties and West bring this to the Court's attention. The Court considers first 800 Adept's request for prejudgment interest on its successful state law tort claims and then whether to award prejudgment interest for 800 Adept's patent infringement claims.

### A.        Prejudgment Interest For Florida Tort Claims

Florida courts consider prejudgment interest an element of pecuniary damages under the "loss theory." *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985); *see also Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 472 F.3d 1329, 1331 (11th Cir. 2006). There are two prerequisites to the award of prejudgment interest as damages: (1) an out-of-pocket pecuniary loss and (2) a fixed date of loss. *Underhill Fancy Veal, Inc. v. Padot*, 677 So. 2d 1378, 1380 (Fla. Dist. Ct. App. 1996). Prejudgment interest is generally not awarded, however, for tort damages because such damages are generally too speculative to liquidate before final judgment. *Lumbermens Mut. Casualty Co. v. Percefull*, 653 So. 2d 389 (Fla. 1995); *see also Nat'l R.R. Passenger Corp. v. Roundtree Trasp. & Rigging, Inc.*, 286 F.3d 1233, 1259 (11th Cir. 2002). This rule is not absolute, however, and prejudgment interest may be awarded for tort damages where there has been an ascertainable, out-of-pocket loss occurring at a specific time prior to the entry of the judgment. *See Underhill Fancy Veal, Inc.*, 677 So. 2d at 1380; *see also Alvarado v. Rice*, 614 So. 2d 498 (Fla. 1993). Prejudgment interest also can be awarded in tort cases where there is a loss of vested property right, such as claims involving the negligent destruction of a building, the wrongful withholding of

sales commissions, or a subcontractor's mechanic's lien. *See Alvarado*, 614 So. 2d at 499.

In the instant case, 800 Adept has not shown that it has suffered an ascertainable, out-of-pocket loss related to its state tort claims at a time prior to the entry of judgment or that it suffered the loss of a vested property right. 800 Adept's theory of liability on its state law claims revolved around Defendants' actions toward five different third parties whom, at one time, had business relationships with 800 Adept. Ms. Denise Dauphin, the financial expert for 800 Adept on the subject of damages, opined at trial that 800 Adept had lost over $3.4 million in revenues from the Murex-Targus Parties' tortious interference with these five customers. (October 20, 2006 Testimony of Denise Dauphin, hereinafter "Dauphin Test."). Of this amount, Ms. Dauphin testified that lost profits represented approximately $2,239,973.00 or, when discounted, $1,863,999.00. (*Id.*).

The jury, however, determined that 800 Adept should be awarded $2,000,000.00 for the Murex-Targus Parties' tortious interference, an amount that is greater than Ms. Dauphin's discounted lost value calculations but less than her lost revenue and her non-discounted lost profits calculation. It is unclear from the verdict whether the jury did not adopt the rate at which Ms. Dauphin discounted 800 Adept's lost profits; whether the jury did not adopt the rate at which Ms. Dauphin calculated lost profits from 800 Adept's lost revenue; or whether the jury based its finding of tortious interference on less than all of the business relationships asserted by 800 Adept. Critically, because the Court cannot determine from the general verdict which relationship(s) was the basis for the jury's finding of damages, it also cannot ascertain a date upon which 800 Adept's liability may spring. *See, e.g.*, *Perdue Farms Inc. v. Hook*, 777 So. 2d 1047, 1054-55 (Fla. Dist. Ct. App. 2001) (finding that it was impossible to determine any date upon which the plaintiff was injured in a claim for unjust enrichment where the jury could have chosen one of a number of dates but did not). The Court,

therefore, determines that 800 Adept is not entitled to prejudgment interest on its state law claim of tortious interference.

### B.    Prejudgment Interest For Patent Infringement Claims

Title 35 U.S.C. § 284 provides that, upon finding a claim of patent infringement, courts "shall award the claimant damages adequate to compensate for the infringement, . . . together with interest and costs as fixed by the court." This provision, according to the U.S. Supreme Court, compels courts to ordinarily award prejudgment interest so that the patent holder would be in as good a position as it would have been had the infringer entered into a reasonable royalty agreement. *See Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648 (1983). Thus, the Court found that prejudgment interest should be awarded under Section 284 absent some justification for withholding such award. *Id.* at 657.

However, Section 284 does not require the award of prejudgment interest whenever infringement is found. *Id.* The statute provides that "interests and costs" should be "fixed by the court", which the Supreme Court has construed to leave some discretion to the district court in awarding prejudgment interest. *Id.* "For example, it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit." *Id.* The Court of Appeals for the Federal Circuit interprets this reasoning to mean that the justification for withholding prejudgment interest must have some relation to the reasons for awarding it. *See Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1558 (Fed. Cir. 1986).

In this case, it is clear that 800 Adept and the Murex-Targus Parties knew that each was a potential competitor of the other party from a very early date. By November of 1996, the principals

of both sides, Juan Sierra for 800 Adept and George Moore for the Murex-Targus Parties, had exchanged correspondence. (September 21, 2006 Testimony of Juan Sierra, hereinafter "Sep. 21 Test.").

A few months later, in December of 1996, the U.S. Patent and Trademark Office ("Patent Office") issued to 800 Adept the original patent of the '111 Reissue, U.S. Patent No. 5,588,048 ("the '048 Patent"). (*See* Def. Ex. 13). Although 800 Adept would later assert claims against the Murex-Targus Parties that originally appeared in the '048 Patent, it did not do so in 1996 or 1997. 800 Adept filed a broadening reissue application for the '048 Patent on May 21, 1997, and the Patent Office reissued the '048 Patent, with a number of new claims, as the '111 Reissue on February 23, 1999. In addition, the Patent Office issued the '698 Patent on September 8, 1998.

In 1997, Juan Sierra received information from Ross Shanken, who was then acting as a salesperson for the Murex-Targus Parties, about the Murex-Targus Parties' services. (Sep. 21 Sierra Test.). Mr. Shanken had called Mr. Sierra to sell the Murex-Targus Parties' services to 800 Adept. (*Id.*). "Intrigued", Mr. Sierra requested that the Murex-Targus Parties' technical people meet with 800 Adept's technical people. (*Id.*). James Shaffer, who was one of the representatives from the Murex-Targus Parties, divulged to 800 Adept at the subsequent meeting that Targus possessed a database of about 125 million geo-coded telephone numbers and that a large number of additional numbers were assigned proxy locations, which struck Mr. Sierra as "as being a near identical copy of predominance." (Sep. 21 Test.").

In September of 1997, 800 Adept, through its attorney, contacted Western Interactive Media, which was later known as Patriot Communications ("Patriot"), about allegedly infringing telephone

call routing services that Patriot provided its customers.[3] (Def. Ex. 174). In response, Patriot chose to terminate its relationship with the Murex-Targus Parties, with whom it had contracted for its telephone call routing services, and use the technology of 800 Adept. (Def. Ex. 176; September 22, 2006 Testimony of Juan Sierra, hereinafter "Sep. 22 Sierra Test."). In so doing, Patriot asked that 800 Adept provide each "routing solution" in the format that had been supplied by the Murex-Targus Parties.[4] Thus, by the end of 1997, 800 Adept understood that the Murex-Targus Parties were providing information for telephone routing services, including the latitude and longitude of individual telephone numbers. (*See* Sep. 22 Sierra Test.).

After this time, 800 Adept began to assert its patent rights in the marketplace. In May of 2000, 800 Adept, acting again through its attorney, advised Budget Group, Inc. ("Budget") that its plan to obtain call routing services from the Murex-Targus Parties potentially infringed 800 Adept's patents. (Def. Ex. 228). By July of 2000, both Targus and AT&T responded to 800 Adept's letter and denied that the telephone routing system which they offered Budget infringed 800 Adept's patent claims. (Def. Exs. 230, 231). In this correspondence and correspondence regarding the patents owned by the Murex-Targus Parties, 800 Adept and its attorney argued positions of infringement and validity that were different than those ultimately relied upon by 800 Adept's counsel in this case.

---

[3] Patriot served as the marking company for another closely-related entity, Access Long-Distance, which acted as the telecommunications platform for routing services. (Sep. 21 Sierra Test.). For simplicity, the Court will refer to both companies as Patriot in this Order.

[4] The "routing solution" references the instructions that are used by the telecommunication platform to route the telephone call or the information that the telecommunications platform needed to calculate such solution. At this time, 800 Adept was supplying a plurality of such routing solutions in a single-table database to its customers. The Murex-Targus Parties, on the other hand, developed a query-based business model in which its customers would not be provided a database but would instead contact a server maintained by the Murex-Targus Parties for routing solutions, as needed.

Moreover, during this time, the Murex-Targus Parties developed and began to market the telephone call routing systems that were found to be infringing by the jury in this case. Unlike the routing system initially developed by 800 Adept, the Murex-Targus Parties developed a query-based business model that delivered each routing solution to its customers upon their request. The Murex-Targus Parties revenue from its routing customers grew from 1997 until 2005.

800 Adept did not initiate this lawsuit until November 13, 2002.[5]

This lawsuit was the result of a long-running and contentious dispute between two competitors in the field of telephone call routing services. 800 Adept knew or should have known, based on the evidence adduced at trial and more particularly upon the testimony of Juan Sierra, its principal and owner, that the Murex-Targus Parties were providing potentially infringing services to third parties as early as 1997.

Even assuming that 800 Adept would not be in a position to assert its patent rights until after the Patent Office issued the '111 Reissue on February 23, 1999, [6] 800 Adept still waited almost three years and nine months to file this lawsuit. There is precedent which views delay as a self-serving litigation tactic that causes damages to escalate and prejudices infringers. *Crystal Semiconductor Corp. v. TriTech Microelectronic Int'l, Corp.*, 246 F.3d 1336, 1362 (Fed. Cir. 2001) (holding that a two year delay in bringing a patent infringement suit prejudiced the infringer and constituted an

---

[5] Juan Sierra maintained at trial that 800 Adept is a small company with limited financial resources that would be at a disadvantage if brought into a lawsuit against the large, well-funded operation of the Murex-Targus Parties. (September 22, 2006 Testimony of Juan Sierra). Contemporaneous correspondence supports Mr. Sierra's testimony. (Def. Ex. 176).

[6] By 1998, the Patent Office had issued the '689 Patent, claims from which 800 Adept also asserted in the instant case.

undue delay). The delay in the instant case might not have been an intentional litigation tactic,[7] but it nonetheless prolonged resolution of the underlying business dispute. During the delay, 800 Adept's attorney took positions on its patents that were different from those that were successfully asserted by 800 Adept at trial. Further, during the delay, the Murex-Targus Parties were investing in a telephone routing system based on a different business model than 800 Adept and were developing their presence in the marketplace. In view of these circumstances, the Court declines to award 800 Adept prejudgment interest for its claims of patent infringement.

### III.  Permanent Injunction

Title 35 U.S.C. § 283 provides that "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits instead of a likelihood of success. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12 (1987). The Supreme Court recently made clear that courts should apply the traditional four-factor test used by court of equity when considering whether to award permanent injunctive relief to a prevailing patent holder. *See eBay, Inc. v. MercExchange, L.L.C.*, --- U.S. ----, ----, 126 S. Ct. 1837, 1839 (2006). The patent holder must demonstrate:"(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between

---

[7]  The evidence at trial shows that 800 Adept did not file this lawsuit until after the Murex-Targus Parties began asserting their patent rights against 800 Adept's customers. Although there is sufficient evidence of record for the jury to find that the Murex-Targus Parties' actions were part of a broader scheme to isolate 800 Adept from its customers, 800 Adept still delayed filing suit a significant period of time.

the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* The Court held that "the discretion whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *Id.* at 1841.

### A.    Application of the Traditional Four-Part Test

#### 1.    Irreparable Harm

Irreparable harm is intended to serve as a measure of the quality or severity of harm that is necessary to trigger equitable intervention. *Id.* The Murex-Targus Parties assert that 800 Adept's delay in filing the instant lawsuit demonstrates a lack of irreparable harm.[8] (Doc. No. 442, pp. 16-17). In support, the Murex-Targus Parties point to a number of court opinions which consider, on motion for a preliminary injunction, the relationship between the nature of alleged harm and movant's delay in seeking injunctive relief. (*Id.*). The Court, too, has found a large number of cases that discuss the consideration that may be given to a movant's delay when determining irreparable injury in the context of a preliminary injunction, but the Court' research has uncovered only one opinion that considered such delay on motion for a permanent injunction.[9]

---

[8]   As far as the Court can discern from the extensive record in the instant case, the Murex-Targus Parties have never to date argued that 800 Adept's claims are barred by the equitable doctrine of laches. *See, e.g.*, *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992). Accordingly, the Court deems such an argument waived if the Murex-Targus Parties are attempting to raise it here in the first instance.

[9]   *See TiVo, Inc. v. Echostar Commc'ns Corp.*, 446 F. Supp. 2d 664, 670 (E.D. Tex. 2006) (finding that such argument is irrelevant in the context of a permanent injunction). All other opinions addressed delay in the context of preliminary injunctions. *See, e.g.*, *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970 (Fed. Cir. 1996) (finding four month delay does not rebut a presumption of irreparable harm in the context of a preliminary injunction); *High Tech Med. Inst., Inc. v. New Image Indus.*,

-10-

Of course, both types of injunctive relief look toward the future. *See Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965); *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952) ("The sole function of an action for injunction is to forestall future violations."). The purpose of preliminary injunctive relief is to restrain or compel conduct in those extraordinary situations where irreparable injury might result from inaction or delay. *See Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir. 2005). It also serves to preserve the relative positions of the parties until a trial on the merits. *Id.* In this regard, the Court of Appeals for the Eleventh Circuit has called irreparable harm the *sine qua non* of injunctive relief. *Id.* at 1133 (quoting *N.E. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). The harm considered by the Court, however, is "confined to that which might occur in the interval between ruling on the preliminary injunction and trial on the merits." *Id.* at 1134.

A permanent injunction, in contrast, can issue only after the right to injunctive relief has been firmly established at a trial on the merits of the movant's claims. *Amoco Prod. Co.*, 480 U.S. at 546 n. 12. Although irreparable harm is an essential finding where the movant seeks a preliminary injunction, a request for a permanent injunction usually turns on the unavailability of an adequate remedy at law. *See Lewis v. S.S. Baune*, 534 F.2d 115, 1123-24 (5th Cir. 1976).[10] Irreparable injury

---

*Inc.*, 49 F.3d 1551 (Fed. Cir. 1995) (a seventeen month delay militates against a finding of irreparable harm in a request for preliminary injunction); *Nutrition 21 v. United States*, 930 F.2d 867 (Fed. Cir. 1991) (finding patent holder's "substantial period" of delay negates a finding of irreparable harm for preliminary injunction); *T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc.*, 821 F.2d 646 (finding fifteen month delay militates against a finding of irreparable harm in the context of a preliminary injunction); *Atari Corp. v. Sega of Am., Inc.*, 869 F. Supp. 783 (N.D. Cal. 1994) (failure to show irreparable harm where the patent holder delayed over seven years before requesting preliminary injunctive relief).

[10] The Eleventh Circuit adopted as binding precedent all cases decided by the Former Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981. *Bonner v. City of*

is one basis, however, for showing the inadequacy of any legal remedy, and as noted by the Court of Appeals for the Fifth Circuit, "[o]ften times the concepts of 'irreparable injury' and 'no adequate remedy at law' are indistinguishable" in the context of a permanent injunction.[11] *Id.* at 1124.

With this background in mind, the argument of the Murex-Targus Parties concerning 800 Adept's delay is much more persuasive in the context of a preliminary injunction. There, a court must carefully weigh harm that is imminent or that which arises in inaction with the goal of maintaining the status quo between the parties. A court confronted with a movant who unreasonably delayed seeking such relief should rightly question whether the request for a preliminary injunction was to address an irreparable injury rather than a shrewd litigation tactic. Here, in contrast, 800 Adept has established the merits of its claims, and its past conduct does little, if anything, to inform the question of whether 800 Adept will be harmed by any future acts of infringement by the Murex-Targus Parties. *See TiVo, Inc. v. Echostar Commc'ns Corp.*, 446 F. Supp. 2d 664, 670 (E.D. Tex. 2006).

Furthermore, even assuming the body of law concerning delay in preliminary injunction cases applies here, a showing of delay alone does not preclude a determination of irreparable harm. *Hybridtech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). A patent holder's delay is only one factor that the Court must consider within the totality of the circumstances. *Id.*

In the instant case, 800 Adept and the Murex-Targus Parties are competitors in the market for telephone call routing services. A competitor has a "right, granted by Congress, not to assist its

---

*Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

[11] For a more thorough discussion of the countervailing considerations for granting preliminary injunctive relief and permanent injunctive relief, *see* Douglas Laycock, *The Death of the Irreparable Injury Rule*, 103 Harv. L. Rev. 687 (1990).

rivals with the use of proprietary technology." *Novozymes A/S v. Genencor Intern., Inc.*, 2007 W.L. 506828 (D. Del. 2007). Moreover, where a company pioneers an invention in the marketplace, irreparable harm flows from a competitor's attempts to usurp the pioneering company's market position and goodwill. *MPT, Inc. v. Marathon Labels, Inc.*, 2007 W.L. 184747 (N.D. Ohio 2007); *TiVo, Inc. v. Echostar Commc'ns Corp.*, 446 F. Supp. 2d 664, 669 (E.D.Tex. 2006); *see also Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994); *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985); *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1580-81 (Fed. Cir. 1983). The evidence presented at trial demonstrated that the Murex-Targus Parties attempted to reduce the market share of 800 Adept through various means, some of which were the bases of the jury's verdict of toritious interference. Such evidence supports a finding of irreparable harm. *See TiVo, Inc.*, 446 F. Supp. 2d at 670 (finding irreparable harm where "the impact of Defendants' continued infringement is shaping the market to Plaintiff's disadvantage and results in long term customer loss).

In view of the above, the Court concludes that the harm caused by the conduct of the Murex-Targus Parties outweighs whatever consideration 800 Adept's delay in bringing suit should be given. Thus, 800 Adept has shown irreparable harm.

### 2.   Inadequate Remedy at Law

The inadequate remedy prong of the traditional four-part test for an injunction is focused on the possibility of alternative modes of relief, regardless of the seriousness of the injury. *Lewis*, 534 F.2d at 1124. In this case, the Murex-Targus Parties argue that 800 Adept may be compensated for any continuing infringement with money damages, which would be an adequate remedy at law. (Doc. No. 442, p. 20). The Murex-Targus Parties contend that 800 Adept cannot simply rest on its

patent right to exclude for injunctive relief to issue. (*Id.*). These arguments are not persuasive.

"The patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money. Because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." *Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994) (internal citation omitted). In other words, injunctive relief operates to protect the interests of a patentee against future infringement, the market effects of which may not be fully compensable in the form of monetary damages.

In this case, 800 Adept is seeking to prevent the Murex-Targus Parties from practicing future acts of infringement. It has already proven such infringement on the merits to the satisfaction of a jury. 800 Adept has proven that the Murex-Targus Parties compete with it in the market for telephone call routing services, and the Murex-Targus Parties concede that they have many more customers than 800 Adept. Furthermore, at least some of those customers where obtained, in the view of the jury in the instant case, through the Murex-Targus Parties' tortious conduct. To allow the Mures-Targus Parties to continue to offer their infringing services in the marketplace under such circumstances in direct competition with 800 Adept would be inequitable.

In addition, the fact that an infringing defendant has apparently, at least temporarily, ceased its infringement is not a basis to deny a permanent injunction against future infringement unless the evidence is very persuasive that the infringing defendant will not resume its infringement. *See W.L. Gore & Assocs. v. Garlock, Inc.*, 842 F.2d 1275, 1281-82 (Fed.Cir.1988). The Murex-Targus Parties offer no such evidence here.

### 3.      Balancing the Hardships

On the one hand, the record shows that 800 Adept is primarily involved in offering its services in the telephone call routing market and that it possesses a small share of that market. On the other hand, the provision of telephone routing services is a very small part of the business of the Murex-Targus Parties, although they service a much large portion of the telephone call routing market than 800 Adept. Thus, a properly circumscribed injunction would permit the Murex-Targus Parties to continue as an ongoing business concern while protecting the interests of 800 Adept. *See TiVo Inc.*, 446 F.Supp. 2d at 670.

### 4.      Public Interest

Lastly, the public interest would not be disserved by a permanent injunction. "The public has an interest in maintaining a strong patent system." *Id.* There is no evidence of record that suggests that the Murex-Targus Parties' infringing services are related to any issue of public health or some other critical public interest.

In conclusion, the Court finds that, upon balancing the factors of the traditional test for equitable relief, the requested injunctive relief should be granted.

### B.      Form and Scope of the Permanent Injunction

The form and scope of a permanent injunction is governed by Federal Rule of Civil Procedure 65(d), which provides as follows:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

FED. R. CIV. P. 65(d). "In accord with the policy of Rule 65(d), the Supreme Court has denounced broad injunctions that merely instruct the enjoined party not to violate a statute," because such "injunctions increase the likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally judged unlawful." *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004). The Federal Circuit has vacated as overly broad injunctions that "failed to state which acts constituted infringement or to expressly limit [their] prohibition to the manufacture, use, or sale of the specific device found to infringe, or devices no more than colorably different from the infringing device." *Id.* Thus "the only acts the injunction may prohibit are infringement of the patent by the adjudicated devices and infringement by devices not more than colorably different from the adjudicated devices." *Id.*; *see also Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002)("[A]n injunction cannot impose unnecessary restraints on lawful activity").

In the instant case, there is sufficient evidence to enjoin the Murex-Targus Parties from offering their IntelliRouting Express, LocationExpress and DART products, or colorable versions of those products, for sale, and from making, using, or selling the same. The record in the instant case demonstrates that there are known methods for constructing computer databases for telephone routing, none of which use latitude and longitude coordinates in the manner disclosed in the '111 Reissue and the '689 Patent. Therefore, the Court will enjoin the Murex-Targus Parties from using latitude and longitude coordinates in the construction of computer database(s) used to produce and/or support telephone routing products or services. To the extent that the Murex-Targus Parties offer services that are not related to telephone routing or services that have substantial non-infringing uses, the Court finds that such services cannot be enjoined or, if enjoined, would present evidentiary difficulties better resolved in another forum. Based on these findings, the Court declines

to adopt the proposed injunction offered by 800 Adept and will include an injunction in a separate Final Judgment that will issue after this Order.

## V.  Enhanced Damages

In exceptional cases of patent infringement, a court may increase the damages up to three times. *See* 35 U.S.C. § 284. Because the jury found that the Murex-Targus Parties willfully infringed the asserted claims of 800 Adept's patents, the Court concludes that this is an exceptional case. *See Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002).

Enhanced damages are appropriate if the "infringer is guilty of conduct upon which increased damages may be based," and if the "totality of the circumstances" supports an enhanced award. *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (*Fed. Cir.* 1996) (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992)). "In exercising [its] discretion [to award enhanced damages], the trial court considers the weight of the evidence of the infringer's culpability, in light of the factors included in *Read*." *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1365 (Fed. Cir. 1998) (internal citations omitted). The *Read* factors are:

> (1) whether the infringer deliberately copied the ideas or design of another;
>
> (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; . . .
>
> (3) the infringer's behavior as a party to the litigation[;] . . .
>
> (4) [d]efendant's size and financial condition[;] . . .
>
> (5) [c]loseness of the case[;] . . .
>
> (6) [d]uration of defendant's misconduct[;] . . .
>
> (7) [r]emedial action by the defendant[;] . . .

-17-

(8) [d]efendant's motivation for harm[;] . . . [and]

(9) [w]hether defendant attempted to conceal its misconduct.

*See* 970 F.2d at 827.

Several of the *Read* factors speak to the circumstances of the instant case. The Murex-Targus Parties clearly knew of 800 Adept's patents, and the record shows that they vigorously attacked the validity of those patents both before the Patent Office and during this litigation. They also provided the infringing services for years prior to the entry of the jury verdict and after notice of the infringement. The evidence adduced at trial also demonstrates that the Murex-Targus Parties aggressively expanded their share of the market during this time using studiously duplicitous business methods to the disadvantage of 800 Adept. In this regard, the willfulness question was not a close one. *See Modine Mfg. Co. v. The Allen Group*, 917 F.2d 538, 543 (Fed.Cir. 1990) (discussing whether the finding of willfulness was "sufficiently close on the evidence."). Also, the evidence shows that 800 Adept, although it was first to market, was a significantly smaller company with a smaller market share than the Murex-Targus Parties. *See St. Regis Paper Co. v. Winchester Carton Corp.*, 410 F. Supp. 1304, 1309 (D. Mass. 1976). The Murex-Targus Parties also appear from the instant record to have the financial wherewithal to absorb the cost of increased damages, if not an award of three times the jury award. The Court, therefore, concludes that the balance of the *Read* factors favors awarding enhanced damages of one and a half times the jury award, i.e., $24,000,000.00, which is an amount sufficient punish the conduct of the Murex-Targus Parties.

## VI. Attorneys' Fees

In exceptional cases, a court may also "award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[T]he Court may consider the factors relevant to an enhanced damages

award in determining whether attorneys' fees should be granted." *nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 391 (D. Del. 2004).

For the reasons discussed above, the Court also finds that this is an exceptional case and determines that 800 Adept should be awarded attorneys' fees. 800 Adept is not entitled to fees, however, that arise from the prosecution of any claim(s) that were not brought before the jury. 800 Adept shall, within fourteen (14) days from the date of this Order,  file with the Court a separate motion or petition together with the supporting evidence necessary to determine a reasonable and appropriate fee. The Murex-Targus Parties shall respond within ten (10) days thereafter.[12]

## VII.  Conclusion

Based on the forgoing, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Entry Of Final Judgment, An Award Of Prejudgment Interest And A Permanent Injunction (Doc. No. 430) of Plaintiff 800 Adept, Inc. and **GRANTS** 800 Adept's Motion for Attorneys' Fees (Doc. No. 431). More specifically, the Court Rules as follows:

(1)     800 Adept's Motion for Prejudgment Interest is **DENIED**;

(2)     800 Adept's Motion for A Permanent Injunction is **GRANTED IN PART**;

(3)     800 Adept's Motion for Enhanced Damages is **GRANTED**, and the Court awards $24,000,000.00 in enhanced damages to 800 Adept against the Murex-Targus Parties; and

(4)     800 Adept's Motion for Attorneys' Fees is **GRANTED**, and 800 Adept shall, within fourteen (14) days of the day of this Order, file with the Court a separate motion or

---

[12]  This finding is limited to the Murex-Targus Parties, and 800 Adept is not entitled to attorney's fees from West Corporation.

petition together with such evidence as necessary to determine a reasonable and appropriate fee.

The Court will enter a separate Final Judgment, in accordance with this Order, forthwith. All other pending motions are denied as moot.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on April 12, 2007.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record